Thank you, Your Honor. Irv Switzer representing the appellant Gus Boosalis. As the Court mentioned, this is the first of two Petters Ponzi scheme cases that you have this morning. Bankruptcy trustees sought and was awarded interest that was paid to early lenders, like my client Gus Boosalis, about 20 years ago, so that the trustee could distribute these funds to the later investors, usually hedge funds. There are two fundamental errors mandating reversal here. The first relates to enforceability of the notes from Petters to Boosalis. If the notes were enforceable, they're valid antecedent debt, and if they're valid antecedent debt, they are for reasonably equivalent value. That issue is in both of the cases this morning. The second issue relates to good faith. Did Mr. Boosalis receive the payments on his notes in good faith? And that's an issue only in this case, because in the next case they stipulate it's a good faith. So on the jury instruction issue, the reasonably equivalent value jury instruction issue, the jury… I would like you to clarify, the jury, you have an adverse jury verdict on both actual and constructive fraud. Correct. So, just prevailing on the good faith issue would not touch the actual fraud verdict, correct? It would not touch, well, it would be one… Because good faith is an element of the plaintiff's, the trustee's case in constructive fraud. Right. If we only prevailed on good faith, we would have only prevailed on one of the two elements of the affirmative defense on actual fraud. Actual, good faith is an affirmative defense under section 513.48 to… Okay, so good faith is in both and equivalent value is in both, and you've got to win both. That's where I'm going as a bottom line. If you don't win both, does the verdict stand? So, if we win on only reasonably equivalent value, that mandates reversal of the constructive fraud verdict, but that's the only, because that's an element of the case for constructive fraud. If we, but if that is reversed and not good faith, then the actual fraud verdict would still stand in the same amount. So, you would still have to address the issue of reasonably equivalent value, even if the numbers wouldn't change because there are two separate verdicts, two separate judgments. So, let me be sure I understand. The jury was asked specifically on the verdict form you're familiar with, and they said no on good faith, and they said no on equivalent value, and the statute has an and. A creditor gets this defense only if you show both of those, good faith and that, right? So, if the, you can, just one of them can be good, right? If the good faith instruction is good, you've lost, right? If we lose on, if we lose on good faith, we lose on actual fraud, we could still win on constructive fraud, but it wouldn't make any difference in the dollar amounts, because the dollar amounts on the constructive fraud and the actual fraud are the same. So, it's something you would have to address, but it wouldn't make any difference on the dollar amounts. Now, you could, however, importantly, Judge Benton, you could find that the instruction 17 was proper, but still find that there was good faith, because the reasonably equivalent value instruction tainted the good faith analysis. The court and the trustee told the jury that the votes, that the notes were paid on, were not valid if they were paid on dishonestly incurred debt, and of course they were paid on dishonestly incurred debt, because patterns lie to my client. That instruction was error, but if you allow me to assume that that's error for a moment, then let's get to the good faith issue, because once the, and the issue on good faith is whether my client received the payments in good faith. So, at the time he got the payments, did he have reason to think that he was getting paid with swindled money from somebody else? That's the actual knowledge standard. Some courts, like Texas, refer to a willful ignorance, which is kind of akin to a should have known standard. Even if the instruction were, instruction 17 were proper, my client was pretty much doomed on the good faith instruction. When the jury was told that he was getting paid on worthless notes, on invalid notes, on unenforceable notes, the trustee said were not worth the paper they were printed on. It's not surprising that just that alone would lead a jury to conclude that Mr. Bosalis did not receive those payments in good faith. But the jury is instructed that that's a separate element that they have to consider, and it seems to me you could argue, and maybe you did, that there's just no way, maybe it was so well hidden, it was so fraudulent, that nobody could figure this out. And so that the good faith does have some, it does do work separate from what you've described in what you think is now an erroneous instruction. Your Honor, instructions are viewed as a whole. As a matter of fact, the trustee cited that proposition of law in their brief. So while in theory we could have won even with that reasonably equivalent value instruction, particularly if there were a proper instruction on good faith, it was still a huge hurdle that we had once the jury was told that my client was being paid on worthless notes. It was going to be really, really tough for him to convince the jury that he received those payments in good faith. And we tried to make those arguments, but the instructions that were given doomed us. Instruction 17 was an erroneous statement of the law without any precedent in any statute or case. The statute just says, did you receive in good faith? There was no Minnesota case listing these red flags. There was no case that I found published any place with jury. Didn't your trial though agree that there were red flags? And that's not completely out in the blue, right? The Citizens Bank case, badges of fraud, and some of these other cases? So badges of fraud and red flags are two different things. Badges of fraud are listed in the statute as part of the actual fraud analysis. That's actually an issue in the second case, badges of fraud. Badges of fraud are not an issue in our case. There is a judicial creation, and I think a judicial just by this... Is it a Minnesota judicial creation? That's what I'm most interested in. It is not a Minnesota judicial creation. There's only one Minnesota case of the both parties side of the Green Pond case that says in dicta that there can be inquiry notice. It doesn't list any red flags. It cites to a federal case on good faith, interpreting the bankruptcy code, the N. Ray Sherman case, and it doesn't use the term red flags, but it talks about the types of things that could put somebody on inquiry notice. In that case, it was a quote, looming bankruptcy. In our case, we had a bankruptcy eight years later, and that Sherman case that was cited in Green Pond, the court said that there wasn't an arm's reach. There was no contention that Mr. Bosalvis was any type of insider or relative. Did I understand your argument, did you begin it by saying it was a legally improper instruction? That's correct. Because as I understood your objection in the district court is that you didn't have a problem as a legal matter, but you were saying either I want more examples, so we're not highlighting very pieces of evidence that the court thinks are important, or take them all out. Maybe I misunderstood the nature of your objection at the district court. So the objection the trial counsel made was complaining about the listing of the red flags. When the judge said, is this incorrect, counsel said, I'm not going to say it's incorrect, but it's certainly incomplete because you could have a thousand of them. So he was trying to explain that the listing of red flags was improper. So just putting them in at all? So I guess what should the instruction have said about that? So the instruction should have said, did Mr. Bosalvis know that the payments he was getting was ill-gotten gain or obtained by fraud, and this could be debatable because there's no Minnesota law on this, or should he have known, or was there willful ignorance, which I think is the test in Texas, which is a little bit higher standard, I think, than should have known, but something like that. Now, in the examples in a particular case, you could look at what might be actual red flags. The red flags here actually were not red flags of what he should have known. Well, relatively high interest rates on loans at 48 percent when during the relevant period that's not anywhere near the interest rate. Isn't that a red flag? You know, a red flag means watch out. Red flag means watch out, but focus on the time that you're looking at the good faith. It's not when he made the investment, it's when he gets paid. And 48 percent was about what the predicate creditor got. It was the same ballpark. In the trustee's brief, he said these were rates not tied to economic reality. That might have been a better instruction if it was not tied to economic reality, but it just said relatively high. Well, sure, they're relatively high compared to my mortgage. It was a very misleading instruction and it really focused more on financial distress than Mr. Bosalis' state of mind, which is what a proper instruction should have had. Was the objection that the instruction should have stopped with the first sentence of that paragraph? That the instruction should have stopped with the examples was exactly how it was articulated, although I think that there was a lot of other problems with that instruction, which I hope the Court would address. That second paragraph was defining inquiry notice. The objection that that's a sufficient, that's not a term that the jury needs a lot of help with, so we could have just stopped with the first sentence. So that would have been much improved instead of this being… No, my question was more specific. Was that the objection? The objection… I haven't read the colloquy. Yeah, so the objection was that the examples should have been deleted. Or they'd be in a more exhaustive list. Didn't you also ask for a more exhaustive list? Same time you said more exhaustive list or none at all, right? So it said alternatively there could be a more exhaustive list, but trial counsel did not offer a more exhaustive list. True. Trial counsel just said let's cut out these misleading examples. When did defense counsel see this as a proposed instruction? I think it was the day before, but I was not… Well, was there a proposal from the defense on this question? The proposal was just to take out those examples. Well, no, Judge Benton says no, it was an either or objection, which would suggest the or would suggest the need for a specific proposal. And he said that he wasn't going to offer that other proposal, so he said basically it could be one of two things, either list a thousand red flags. So what do I do? So what you do is say that he should not have listed the four misleading, innocuous red flags. Why shouldn't defense counsel have had a proper alternative? I think… Are we supposed to make it up or is the district court supposed to make it up? You can have a flat objection. This is not a term that the jury needs help on with such things as possible alternative red flags. Stop there. Now I know what the defense has proposed. What you're saying, I don't know what they proposed. What they proposed was take out those examples. It was stated in the alternative. I don't know that you've… I don't think the objection was stated in the alternative. I think the reason why the trial counsel said take out those listed red flags was that the alternative was unwieldy, which is you could have a thousand. I can read it. So I just have a few seconds left, so if I could reserve that for rebuttal. Mr. Ingham? Good morning, Your Honors. May it please the court, counsel, Andrew Brantingham, on behalf of the trustee, I'm here to urge the court to affirm the judgment below in its entirety. The case obviously arises from a jury verdict that found on overwhelming and essentially unrebutted evidence that the appellant received over $3.5 million in money that was fraudulently taken from victims of the PCI Ponzi scheme. An appellant asks the court to set aside that verdict by attacking these two jury instructions that Your Honors have already hit on, and it is correct, as you've noted, that to reverse the court must find prejudicial abuse of discretion or error in both of those instructions, 17 and 18. So I'll focus initially on instruction 17, because that's been the focus thus far, and it also provides the clearest and simplest and straightest path to affirmance here. I assume we're leaving for the next argument the question of legally enforceable contract. I'm certainly happy to talk about that, Your Honor. That's what the basis of 18 is. That's correct. And if the district court's notion of legally enforceable contract, that is as stated in all the briefs, if that equals legal error by reinserting the Ponzi presumption expressly rejected by the Supreme Court of Minnesota, then would you agree instruction 18 is gone, is error? And now we can just talk about good faith, and we'll leave that issue for the next argument. I would agree that if you perceive legal error in instruction 18, then instruction 17 is the... That's my question. If the district court's interpretation of legally enforceable contract, which is looking after the fact as a matter of hindsight years later, it's void because it was in furtherance of a Ponzi scheme. If that is the legal equivalent of restoring the Ponzi scheme presumption that the Finn case rejected as a matter of Minnesota law, then this language in instruction 18 shares that fatal flaw, doesn't it? If instruction 18 reinstated the Ponzi scheme presumption, it is an error of law. But instruction 18 did not do that. It did not use a presumption. It was entirely consistent with Finn, Your Honor, and I'm happy to get in... Use a presumption. There was no presumption in this case, Your Honor, because there was transfer by transfer evidence with respect to every single one of these transactions. That's not the point. The point is that the jury was instructed, I believe, at least this is what the brief suggests, it's what the district court wrote in granting summary judgment in the next case, that all of the promissory notes, all of the investments, were void as against public policy as a matter of Minnesota law, and therefore there cannot be reasonably equivalent value. There wasn't a valid antecedent debt. That's correct. That's what instruction 18 says in so many words, right? That is, instruction 18 doesn't speak in terms of a Ponzi scheme, but it speaks in terms of notes being used to further fraud and so on. But the key distinction, Your Honor, is the district court did not presume those facts about the notes. It was proved. In my case to a jury, that every single one of those notes was procured through fraud, used to further the fraud, and paid with money stolen from other investors. There is no contrary evidence in this record, and the jury's verdict absolutely shows that on a transfer by transfer basis, exactly as Finn instructs, the trustee proved every single one of these transactions was part of the central churn of the Ponzi scheme, and that is fundamentally different from the facts in Finn. But they weren't legally unenforceable at the time that the notes were taken and the payments were made. They were only, it seems to me, they were only legally unenforceable when years later people uncovered the Ponzi scheme. Well, Your Honor, that takes us into Finn, and I'm happy to dig into that deeper or focus on 17, which I think is. How do you defend the instruction other than by the analysis that the district court made more explicit in granting summary judgment in Curio's case? So the instruction 18, Your Honor, I think is consistent with Finn. It's consistent with Minnesota law, very deeply rooted Minnesota law governing the enforceability of contracts. It doesn't tell the jury they're supposed to go transfer by transfer. It doesn't have the language that sounds like Finn. It has language that says if an interest payment is paid on, really, it says that twice. If an interest payment is paid on dishonestly incurred debt, then there's no valid antecedent debt, not for reasonable value. It says that twice. That's directly contrary to Finn. It speaks in terms of single transfers, and on the elements of the trustee's claim, the jury was instructed that it should find, that it should assess the elements of the trustee's claim on each individual transfer. It doesn't say that in 18. Not in 18. Okay, tell me where it says that. It does not say with respect to transfer by transfer. Yeah, it sure doesn't. Go ahead. Does it some other place in instruction say that? I don't think so. Your Honor, I will, in instruction nine speaks to the elements of actual fraud. Does anything say transfer by transfer? The phrase transfer by transfer is not used. Okay. No. That's pretty bad, right, to comply with Finn? Well, Your Honor, I think that the way that the evidence was presented and the way that the instructions and the jury verdict form presented the issues as a whole left the jury basically, I mean, the evidence was presented on a transfer by transfer basis, and the jury was effectively told that. I mean, if there were some transactions by the Petters PCI that were legitimate. None of the ones in this case, Your Honor. So what? Until it's dug out 10 years later and the whole world has been fooled and defrauded, what is legally unenforceable about notes taken based on a representation or promise by the debtor that the proceeds will be used to finance legitimate transactions? What is legally unenforceable, Your Honor, is that the law of this court and of Minnesota and of every other federal court of appeals that has addressed this issue has recognized that contracts used in such a fashion to defraud third parties are void as against public policy. Some of them, and not Finn, but some of them say that and some of them don't. It's hard to draw a line, isn't it, counsel on the ones particularly on alcohol and horse racing and prostitution and that stuff? It's hard to figure those cases out, isn't it? I actually think that what those cases stand for that you're referring to,  Correct. and those deal with disputes between the two parties to the contract and what they effectively say and, for example, the Hart Publication case, as that appellant cited, says that the breaching party cannot use its own fraud or illegality to avoid responsibility. That makes perfect sense as a matter of public policy. We don't relieve a fraudster of his obligation. No push and profit from own wrong. That is not the situation we're in here because under Section 544B, the trustee stands in the shoes of the predicate creditors. We are not PCI. We are not the fraudster. We represent the interests of innocent third parties who were defrauded. This court said in the Horbach case, and there are many other cases cited in our briefs, that a contract which has the effect of carrying out a fraud on a third party is void, and that was the intent of these contracts. It was proven on a transaction-by-transaction basis. That was the effect, and the best authority I can point the court to is the decisions of all the other federal courts of appeals that have addressed these facts. On Minnesota law? Not on Minnesota law. Well, they were all rejected in Finn. Your Honor, Finn, respectfully, the presumption of Finn was rejected. Excuse me, the Ponzi scheme presumption. But the effect of the argument is since none of this was known at the time, and you're claiming there doesn't have to be any proof of intent or knowledge on the other side with respect to equivalent value, you've restored the Ponzi presumption. You have used the discovery of fraud long after the fact to declare void, not just voidable, every single repayment of a note during the course of the scheme. That is, I can't imagine anything that is more equivalent to a Ponzi presumption. Let me try to take you through what I think in Finn shows that this is consistent with Finn, Your Honor. Yeah, I'm going to be rereading page 651 when you do. Finn does not hold that as a matter of law, all contracts with a Ponzi scheme operator are legally enforceable. It holds the contracts in front of it were legally enforceable. But Finn does not change, does not purport to change, the law governing enforceability of contracts, the underlying common law. On page 651, it expressly rejects all the federal court cases you're relying on. However, the court says, courts that adopt the Ponzi scheme presumption effectively deem a contract between the operator of the scheme and an investor to be unenforceable as a matter of public policy. And that, Your Honor, the Ponzi scheme presumption eliminates the possibility that an investor has a legally enforceable claim against the debtor based on the investment contract. And then it rejects that reasoning. It rejects the presumption that every contract with a Ponzi scheme is a fraudulent contract. The contracts at issue in Finn were real loans based on real business dealings. They were real loans. The proceeds were just misused. The proceeds were misused. The loans were never intended to be used as represented to the dependent. Never intended by whom? PCI. Okay, well, why are we? I mean, that's fraudulent preference talk. It's fraudulent intent on the part of PCI, which is the dispositive element on the trustee's claim for fraudulent transfer. Sounds like bankruptcy fraudulent preference. You heard what Judge Logan said talk, and the Supreme Court of Minnesota rejects that too. You're talking about in Finn? Yeah, in Finn. And what Finn says about preferences, and if you look at the cases at sites, is that a preference is okay if it is honest repayment of an honest debt. It is okay if it is not fraudulent. It's the time limits in fraudulent preference bankruptcy law that are critical here. Well, this isn't a preference, Your Honor. No, but your argument is preference law argument. Respectfully, Your Honor, I wouldn't agree with that. We've established all the elements of the fraudulent transfer. Well, I mean, I've been listening to preference arguments for many, many years, and that's sure what it sounds like. Let me return, if I can, Your Honor, to the key points in Finn that I think support our position on this. First of all is the question presented, and that is whether the so-called Ponzi scheme presumption applies. That's at page 642. So this is limited to the presumption, which is a factual and evidentiary shortcut to prove facts, right? Or it can be a presumption of law, sir. There are presumptions of law. Go ahead. Sure. To be clear, nowhere in Finn does the Minnesota Supreme Court say, as a matter of law, these contracts are always enforceable. It says the contracts in front of it are enforceable. It says that existence of reasonably equivalent value depends on the facts and circumstances of each case. It says that a contractual promise to pay, quote, would fit comfortably within the realm of antecedent debt absent the existence of a Ponzi scheme. That's at 651. That's just table setting. Well, what it's saying is that it's limiting, it's focusing its decision on the facts in front of it, which were legitimate deals. It's stating the obvious, that if you didn't have your argument about a Ponzi scheme, this wouldn't be a question. This would unquestionably be an antecedent debt, payments that satisfy antecedent debts. And they didn't worsen PCI's position. PCI got money in and money out, and it got new investments to investment dollars to use to promote its business, supposing what everybody would have believed at the time, in exchange for satisfying an antecedent debt, which was a liability before it was satisfied. Your Honor, even Finn acknowledges that in a Ponzi scheme like this, payment of interest to an investor that has just fraudulently obtained interest does not provide reasonable equivalent value. Well, counsel, read me that language. Quote, in many Ponzi schemes, it is true that there is... Give me the page number. 652. Pardon? 652 of the Court's opinion in Finn. Quote, in many Ponzi schemes, it is true that there is no legitimate source of earnings, and the payment of profits confers no benefit on the Ponzi scheme, but merely depletes the scheme's resources faster. Unquote. That is true of many... The next sentence, I think, is critical. Not every Ponzi scheme lacks a legitimate source of earnings. Right. And if Instruction 18 had keyed the jury to that statement... But, Your Honor, the evidence before the jury was that every single one of these deals was funded by fraudulently obtained money from the Ponzi scheme. Only in hindsight. I see nowhere in the case law or in logic where the hindsight or the timing of it matters. What this Court said in Horbach v. Coyle, for example, was that parole evidence is always admissible to prove fraud. That's a Missouri case? That is a Missouri law case, Your Honor, yes. But on general principles, parole evidence is always admissible to prove that a contract was part of an illegal deal. And on that basis, for example, in Horbach, the Court ordered a new trial, basically to allow evidence that a deal was tainted by fraud and therefore unenforceable. Your Honor, if the Court agrees that the Reasonably Equivalent Value instruction was incorrect, I ask that there be reversal because that instruction doomed the good faith defense. It doesn't even refer to it. 17 doesn't.  They look independent to me. They aren't independent, Your Honor. What was the jury supposed to think after being told by the trustee in closing argument that those notes were worthless, not worth the paper they were printed on? The argument of counsel is not law. You know what the judge told them. But that's consistent with the instruction, too. No, the instruction doesn't mention it. 17 doesn't mention 18. Tell me if it does. The instructions don't refer to each other, but you read the instructions together. That's what they said. That's what the trustee said in their brief. So if you find error, I think that tainted everything. Our objection, as Judge Loken pointed out, was that the part of the paragraph beginning with sufficient facts in 17 be deleted. Look also at that last sentence that says the presence of such signs must place a reasonable person on inquiry notice. Must place is not anywhere found in any precedent on good faith cases. They're always consider the facts and you get a chance to argue. We lost the chance to argue. On the issue of whether the trustee, whether Finn doesn't apply because this is a case by the trustee, the issue is whether the notes were enforceable. And that was the case in Finn as well. So the issue is, were the notes between Petters and Bustalis enforceable? And if I can point out one... You're out of time. Thank you, Your Honor. I ask for reversal. Thank you. Thank you, Counsel. The case has certainly been thoroughly briefed and we've gotten into at least part of it in argument. We'll take a break and let Counsel for the brief case decide what needs to be... We need to hear further. Thank you. It's taken under advisement.